344 Ill. App. 65 (1951)
99 N.E.2d 738
Gene Little et al., Appellees,
v.
Chicago Woman's Bowling Association, Inc., Mary Clesse, Marge Earley, Betty Ramsey and Louise LeGrand, Appellants.
Gen. No. 45,362.
Illinois Appellate Court.
Opinion filed June 19, 1951.
Rehearing denied July 2, 1951.
Released for publication July 5, 1951.
*66 *67 CHARLES V. FALKENBERG, of Chicago, for appellants.
ALBERT E. JENNER, JR., and PHILIP W. TONE, both of Chicago, MICHAEL J. DUNN, of Milwaukee, Wisconsin, and KARL C. WILLIAMS, of Rockford, for appellees; JOHNSTON, THOMPSON, RAYMOND & MAYER, of Chicago, of counsel.
MR. JUSTICE FRIEND delivered the opinion of the court.
This litigation, commenced more than five years ago, arose out of a difference of opinion among members of the Chicago Woman's Bowling Association (CWBA) as to whether affiliation of the Chicago group with the Woman's International Bowling Congress (WIBC) and the Illinois Woman's Bowling Association (IWBA) on a dues-paying basis should be continued. The detailed facts appear in our former opinion (Little v. Chicago Woman's Bowling Ass'n, Inc., 337 Ill. App. 226 (1949)), and need not be repeated here except insofar as they are essential to an understanding of the issues involved in this appeal. The precise point of difference in the principal litigation rested upon the fact that the WIBC and the IWBA insisted that the Chicago group collect annual national and state dues from all its members, along with local dues, and remit the national and local dues to those groups. A substantial majority segment of the Chicago group agreed with this policy, whereas certain officers and a minority group of CWBA were opposed to the compulsory-dues collection plan, and insisted that payment of state and national dues by individual members of CWBA be on a purely voluntary basis. *68 The right of the city association and its members to participate in national and state or even local bowling tournaments sanctioned by WIBC and IWBA depended upon the solution of that issue. As a result of this controversy, some of the Chicago group considered withdrawal from affiliation with the national and state organization. On the premise that the national association (WIBC) was the parent or supreme body, and that the Chicago association was one of its subordinate affiliates, the governing board of WIBC removed the officers of the Chicago group (CWBA) and appointed new officers to serve until successors could be elected at the next annual meeting. When, in October 1945, the removed officers undertook to hold meetings of those members of the Chicago group who had not paid the compulsory dues but only CWBA dues and to consider alterations of the constitution and by laws of CWBA for the purpose of effecting disaffiliation, injunction proceedings were commenced, and a temporary injunction was entered. The elected officers filed a counterclaim against WIBC and IWBA and the individual plaintiffs. After issue was joined, the cause was heard before a master, who held that CWBA was independent of, not subordinate to, WIBC and IWBA, and that the proposed removal of the elected officers and the appointment of new ones was void. The chancellor overruled the master and entered a decree making the injunction permanent. On appeal we approved the master's findings and conclusions. The certified transcript of the judgment and mandate of this court filed in the superior court recited that on March 1, 1949 this court entered its judgment reversing the decree and remanding the cause with directions "to enter a decree in accordance with the findings and recommendations of the Master." March 10, 1949, counterdefendants WIBC and IWBA filed petitions for rehearing, but no petition was filed on behalf of Gene Little *69 et al., who had instituted the proceedings as a class suit on behalf of those members of CWBA who wished affiliation with the other organizations. March 30, 1949 we entered an order denying the petitions and the opinion was slightly modified so that the words "in the light of membership conditions as they appear when the matter is presented to the court" were added to the concluding paragraph of the opinion, but no order was ever entered modifying the final judgment of March 1, 1949. Subsequently WIBC and IWBA sought leave to appeal to the Supreme Court under section 75 (2) of the Civil Practice Act. We stayed issuance of our mandate pending action by the Supreme Court which on September 12, 1949 denied leave to appeal (342 Ill. App. xiii). Thereafter appellants waited six months before filing the mandate of this court in the superior court on March 14, 1950, which was over a year after the entry of our final judgment on March 1, 1949, but within one year from the date (March 30, 1949) upon which rehearing was denied. It is conceded that new hearings and proceedings in the superior court, within the meaning of section 88 (3) of the Civil Practice Act, would have been necessary had appellants seen fit to have the cause reinstated and redocketed within one year. Under the recommendations of the master, which were to determine the relief provisions of the decree contemplated, there remained (1) an accounting of dues collected by the appointed officers of CWBA, (2) a determination of those who paid dues during the pendency of the litigation and their installation as members of CWBA, (3) the holding of meetings of CWBA under court supervision to enable the membership to determine the various questions of policy in dispute, and (4) the implementation of decisions reached at such meetings.
On February 23, 1950, despite the fact that no mandate had been filed as required by section 88 (3) of *70 the Civil Practice Act and no attempt had been made to reinstate or redocket the cause, defendants and counterclaimants filed a petition predicated upon events which had allegedly occurred during the five years the litigation had been pending, seeking to add parties cross-defendant and asking injunctive and other affirmative relief requiring further hearings and proceedings in the Superior Court. Counsel for counterdefendants, contending that the purpose of that petition was to launch "another round of litigation," challenged the jurisdiction of the court to entertain the petition on the ground that the mandate of the Appellate Court had not been filed and the cause reinstated and redocketed as required by the Civil Practice Act. Counterclaimants obtained the mandate but did not file it until March 14, 1950, and on March 30, 1950 they moved to reinstate and redocket. Counterdefendants thereupon filed their answer challenging the jurisdiction of the superior court to redocket the cause and undertake new proceedings therein on the ground that counterclaimants had failed to file the mandate of the Appellate Court with the clerk of the superior court within one year after the final determination by this court, as required by section 88 (3) of the Civil Practice Act (Ill. Rev. Stat. 1949, ch. 110, par. 212 (3)) [Jones Ill. Stats. Ann. 104.088 (3)]. The chancellor sustained counterdefendants' objections, finding that in order to comply with the mandate and to grant the relief prayed in the motion to redocket the petition to add parties and for other relief, "further proceedings and a new hearing will be required"; that the mandate was not filed in the superior court within one year after the determination of the cause by the reviewing court; and that the superior court was "without jurisdiction to entertain further proceedings in the cause as would be required under said mandate and as is requested in the aforesaid motion and petition." Counterclaimants *71 have taken an appeal from that order. The question presented is whether the "final determination by the reviewing court," within the meaning of the language in section 88 (3) was the judgment of the Appellate Court entered March 1, 1949, reversing the decree of the superior court approving the recommendations of the master and directing the entry of a decree in accordance with those recommendations, as held by the chancellor in the proceedings from which this appeal is taken; or whether it was the order of the Appellate Court entered March 30, 1949 denying the petition for rehearing, as counterclaimants contend.
[1, 2] After consideration of the able arguments by respective counsel and the authorities cited, we hold with the position taken by counterdefendants that "final determination," as employed in the statute, necessarily means the date the final judgment of the reviewing court becomes final, and not the expiration of the last day for filing petition for rehearing, or the entry of an order denying the petition if one is filed, or the date of entry of the order of the Supreme Court denying leave to appeal. The authorities are substantially in agreement that the filing of a petition for rehearing or for leave to appeal, when accompanied by stay of mandate, merely stays the enforcement of the "final determination" theretofore reached by the reviewing court by temporarily holding up the issuance of the mandate; the "finality" of the prior determination of the reviewing court is not affected. Dodd and Edmunds, Illinois Appellate Jurisdiction and Practice, sec. 1275.
[3, 4] Section 88 (3) of the statute provides that "no new trial or hearing shall be had by reason of the reversal of any judgment, order or decree, unless the mandate shall be filed in the trial court within one year after final determination by the reviewing court." Counsel say that they find no decisions interpreting the *72 meaning of "final determination" as employed in section 88 of the statute. On oral argument counsel for counterclaimants readily conceded that under decisions interpreting that provision in prior statutes the period for filing the mandate commenced with the filing of the order of the Appellate Court and was not extended by the filing of the petition for rehearing; he urged, however, that the new Practice Act ought to be more liberally construed. People ex rel. Sprague v. Clark, 300 Ill. 583 (1921), was the latest expression of the Supreme Court under the 1907 statute; there the court held that whatever the rule might be in other jurisdictions, in Illinois a judgment reversing and remanding for further proceedings is a final judgment, and said that the cases upon which it relied settled "beyond controversy" that its prior judgment (in People ex rel. Sprague v. Clark, 298 Ill. 170 (1921)) holding void the election therein questioned "was a final and conclusive adjudication" and that "the filing of a petition for a rehearing did not set aside, supersede or render interlocutory the judgment." We think that the Sprague opinion and the decisions cited therein are controlling, and that the reasons and logic employed in that case under the former statute are equally applicable to section 88 (3). Counterclaimants also contend that while the order of March 30, 1949 denied the petition for rehearing, it modified the original opinion as well, and that therefore the order of March 1 was not final. But this modification did not affect the final determination by the Appellate Court; the only recommendations of the master to which the language in question could have applied are clear in themselves and are not altered by the modifying language. In fact, we think the added language was merely confirmatory of certain of the master's recommendations as appear on pages 239 and 240 of our former opinion (337 Ill. App. 226). These recommendations *73 contemplated a meeting of the members of CWBA, under the direction of the court, for the purpose of submitting to them by ballot the questions whether the dues for the year 1946-47 should be tendered to WIBC, whether CWBA should apply to WIBC for city-association sanction for the year 1946-47, and whether dues in excess of twenty-five cents per member collected by the elected officers of CWBA for the year 1945-46 should be forwarded to WIBC or returned to those persons who contributed the funds or to the treasurer of CWBA; and that the officers of CWBA be directed to submit to the members of that association, at its next annual meeting, certain amendments to the constitution and by-laws. Our opinion approved these recommendations of the master; in the order of March 30, 1949 denying the petition for rehearing we added nothing of substance to what had already been said in the opinion, but merely specified that further proceedings should be had in the light of membership conditions as they would appear when the matter was presented to the court. The final determination of the case occurred on March 1, 1949, and under section 88 (3) it was incumbent upon counterclaimants to file the mandate within one year from that date.
[5, 6] In support of their contention that the decision of the Appellate Court was not final until the mandate became available, counterclaimants argue, inter alia, (1) that a delay in disposing of the petition for rehearing would preclude appeal to the Supreme Court; (2) that a longer delay would preclude a successful appellant from filing the mandate within the one year allowed by section 88 (3); and (3) that the mandate having been stayed pending the Supreme Court's determination of the petition for leave to appeal, a delay by that court of over one year in making that determination would preclude compliance with section 88 (3). An answer to the first of these contentions *74 is that the legislature has provided a different rule for determining finality in the case of an appeal from the Appellate Court to the Supreme Court (Civil Act, section 75, and Supreme Court Rule 32). As to the remaining suggestions, it should be stated that if such delays were to occur, the court would undoubtedly protect the appellant's right to file the mandate under section 88 (3) by vacating its earlier judgment and entering a new one, if requested to do so.
In view of our conclusion that the Appellate Court's opinion and order of March 1, 1949 was "the final determination" by the reviewing court within the meaning of section 88 (3) of the Civil Practice Act, the judgment of the superior court in refusing to permit further proceedings in the case because the mandate was not filed in time should be affirmed, and it is so ordered.
Judgment affirmed.
SCHWARTZ, P.J., concurs.